RENDERED: JULY 2, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1348-MR

CHRISTOPHER R. MILLER        APPELLANT


v.   APPEAL FROM KENTON CIRCUIT COURT
HONORABLE MARY K. MOLLOY, JUDGE
ACTION NO. 23-CR-00355-001


COMMONWEALTH OF KENTUCKY      APPELLEE


OPINION
AFFIRMING IN PART, VACATING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: COMBS, A. JONES, AND McNEILL, JUDGES.

JONES, A., JUDGE: Christopher Miller appeals from the Kenton Circuit Court's final judgment and sentence following the denial of his motion to suppress evidence and his subsequent conviction at his jury trial. We affirm the trial court's denial of Miller's motion to suppress, but we agree with both Miller and the Commonwealth that the trial court erred when it sentenced Miller to a term of

years greater than the jury's recommendation. For this reason, we vacate that portion of the judgment and remand for resentencing.

## I. BACKGROUND

In January 2023, Rocky Stevenson was the owner of Rocky's Auto Sales, a business in Louisville. As part of the business, Rocky would occasionally need to repossess vehicles, which he would do with his son, Hunter. Unfortunately, in January 2023, Hunter was in a rehabilitation facility and could not assist his father. Instead, Rocky's ex-wife and Hunter's mother, Robin Stevenson, agreed to perform a repossession for the business. To assist her in this endeavor, she enlisted help from her boyfriend, Craig Veteto, and their mutual friend, the Appellant, Christopher Miller. Miller's role would be to serve as a relief driver following the repossession. At some point during the late evening of January 12 going into the early morning hours of January 13, 2023, the three individuals took Hunter's vehicle, a Ford Flex, and drove from Rocky's Auto Sales to the repossession site in Cincinnati. After successfully seizing the vehicle, the three began to drive back to Louisville. Veteto drove the repossessed vehicle, while Robin and Miller alternated driving the Flex.

At approximately 1:30 a.m., Officer Michael Haught of the Villa Hills Police Department observed Miller as he drove the Ford Flex through Kenton County, Kentucky. Officer Haught noticed that the Flex had expired vehicle

-2-

registration plates, and he initiated a traffic stop based on the observed violation. Officer Haught spoke to Robin, who informed him they were repossessing a vehicle. Meanwhile, Veteto had pulled over to the curb in front of the Flex during the traffic stop, and he was speaking with another Villa Hills police officer at the scene.

At this point, Officer Haught asked Robin and Miller for their driver's licenses and proof of insurance for the vehicle. Miller could not find his license in his wallet, so Officer Haught asked him for his personal information to run it through the computer in his cruiser. Robin gave Officer Haught her license, but she could not find proof of insurance for the Flex. Although the vehicle was typically used by Hunter, the Flex was actually owned by Rocky's Auto Sales. Robin informed Officer Haught that she could obtain the vehicle's proof of insurance by contacting her ex-husband and having him send her the insurance information. While she attempted to do so, Officer Haught returned to his cruiser and ran the information provided by Robin and Miller, as well as the vehicle's VIN to verify its registration.[1]

---

[1] The "Vehicle Identification Number" or "VIN" is a 17-character identification number which uniquely identifies motor vehicles manufactured for sale in the United States. *National Highway Traffic Safety Administration (NHTSA) – New Manufacturers Handbook* (rev. date 5/18/2026), https://vpic.nhtsa.dot.gov/documents/ManufacturerHandbook.pdf?d=241025a. Checking a vehicle's VIN helps law enforcement determine whether a vehicle has been reported stolen.

We note here that Officer Haught's suspicions were heightened by the peculiar circumstances of this traffic stop. He had stopped the Ford Flex at approximately 1:30 a.m. for an expired registration. Miller, the driver of the vehicle, could not locate his driver's license. The other occupant of the vehicle claimed that it belonged to her ex-husband's business, but she had no paperwork for the vehicle's ownership, nor could she locate proof of insurance inside the vehicle. There was also some confusion about whether it was the Flex or the vehicle driven by Veteto which had been repossessed, and Officer Haught believed the occupants of both vehicles might be giving him inconsistent stories. Officer Haught later explained that he used the VIN because the Flex had dealer tags, and dealer tags will very often fail to carry information about the vehicle itself. In short, Officer Haught was concerned that the Flex may have been stolen.

Officer Haught's concerns were amplified when he ran the information provided to him and discovered that Miller had a criminal history which included drugs and weapons charges. At this point, Officer Haught elected to call for a K9 unit. Another officer, Taylor Bellau of the Fort Wright Police Department, had arrived to offer support during the stop. Officer Haught asked Officer Bellau to check on the occupants of the Flex and see if the insurance information had been located. He also asked Officer Bellau to see if she could smell marijuana coming from the car. When she returned, Officer Bellau reported

that there was as yet no insurance information, and she could only smell Robin's perfume in the vehicle.

The K9 unit arrived at approximately the same time that Robin reported that Rocky could not locate the Flex's insurance information. When the K9 officer instructed Robin and Miller to exit the vehicle so that he could begin the sniff search, he noticed a Taurus revolver in plain view in the pocket of the driver's door. At this point, Robin and Miller were handcuffed. Officer Haught exited his cruiser to ask what was happening, and he was informed about the handgun in the vehicle. Officer Haught knew that Miller was a convicted felon and not permitted to possess a firearm. When the Flex was searched, officers discovered a second handgun, a Glock, in the center console.

Officer Haught placed Miller under arrest and brought him to the Kenton County Detention Center for processing, at which time Miller admitted that he had some methamphetamine in his sock. Officer Haught then located a small plastic bag of methamphetamine when he removed Miller's shoe. As a result of this incident, the Kenton County grand jury indicted Miller on two counts of possession of a handgun by a convicted felon[2] and one count of first-degree possession of a controlled substance (methamphetamine).[3]

---

[2] Kentucky Revised Statute (KRS) 527.040, a Class C felony.

[3] KRS 218A.1415, a Class D felony with a maximum sentence of three years.

During the pretrial phase, Miller moved to suppress evidence resulting from the search of the vehicle, alleging that law enforcement had impermissibly prolonged the traffic stop in order to conduct a K9 sniff search. The trial court conducted a hearing before it denied Miller's motion. Relying on the Kentucky Supreme Court's decision in *Carlisle v. Commonwealth*, 601 S.W.3d 168 (Ky. 2020), and this Court's decision in *Olmeda v. Commonwealth*, 601 S.W.3d 183 (Ky. App. 2020), the trial court ruled that the traffic stop was not unlawfully extended because "[i]nquiries . . . regarding ownership of and insurance on the vehicle . . . do not constitute an unlawful extension of the traffic stop." (Record (R.) at 158.)

Following the trial court's denial of his suppression motion, Miller was convicted by a jury of first-degree possession of a controlled substance (methamphetamine). The trial court granted a directed verdict on one of the handgun charges, and the jury acquitted Miller of the other count. The jury fixed Miller's sentence at one-year's imprisonment. However, the trial court ultimately sentenced Miller to a term of two-years' imprisonment and probated the sentence for three years. This appeal followed.

## II. ANALYSIS

Miller presents two issues on appeal. First, Miller contends the trial court erroneously denied his motion to suppress evidence obtained from the

warrantless search of his vehicle. "Warrantless searches are '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Robbins v. Commonwealth*, 336 S.W.3d 60, 63 (Ky. 2011) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). "When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law." *Greer v. Commonwealth*, 514 S.W.3d 566, 568 (Ky. App. 2017) (citation omitted).

We begin with the legality of the stop itself. "A police officer is authorized to conduct a traffic stop when he or she reasonably believes that a traffic violation has occurred." *Commonwealth v. Lane*, 553 S.W.3d 203, 205 (Ky. 2018) (citing *Commonwealth v. Bucalo*, 422 S.W.3d 253, 258 (Ky. 2013)). "It should be noted with regard to the traffic stop, that an officer who has probable cause to believe a civil traffic violation has occurred may stop a vehicle regardless of his or her subjective motivation in doing so." *Greer*, 514 S.W.3d at 569 (quoting *Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky. 2001)); *see also Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996). Officer Haught stopped the Ford Flex because he observed it had an expired registration, and so the initial stop was lawful.

The crux of Miller's argument, however, is that the stop was unlawfully extended beyond the purpose of the observed traffic infraction in order to allow a K9 unit to perform a sniff search. The United States Supreme Court has held as follows:

> a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a ticket for the violation.

*Rodriguez v. United States*, 575 U.S. 348, 350-51, 135 S. Ct. 1609, 1612, 191 L. Ed. 2d 492 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 837, 160 L. Ed. 2d 842 (2005)). A police officer may not extend a traffic stop beyond its initial purpose in order to investigate unrelated matters unless some other factor provides reasonable suspicion for additional investigation. *Id.*, 575 U.S. at 355, 135 S. Ct. at 1615.

Evaluating *Rodriguez*, our Supreme Court reasoned that "the key inquiry is not whether the stop is extended beyond its natural conclusion; rather, the Court must consider whether the officer's conduct (*e.g.*, asking unrelated questions or conducting a sniff test) adds any amount of time to the stop." *Carlisle v. Commonwealth*, 601 S.W.3d 168, 175 (Ky. 2020). In *Carlisle*, the Kentucky Supreme Court provided a helpful three-part analytical framework to resolve

whether police unlawfully prolong a traffic stop: "First, was the traffic stop ongoing or had it concluded?  Second, if the stop was ongoing, did [the officer] inquire into matters unrelated to the stop's mission?  Third, if the officer inquired into unrelated matters, did his inquiries prolong the stop?"  *Id*.

Answering the first question, it is clear that the traffic stop was ongoing because it was premised on a traffic violation.  The ordinary inquiries relating to a traffic violation include requests for the driver's license, registration, and proof of insurance.  *See id.* at 176; *Rodriguez*, 575 U.S. at 355, 135 S. Ct. at 1615.  Neither Miller, as the driver, nor Robin, as representing the owner of the vehicle, was able to immediately produce insurance information.  However, nothing precluded Officer Haught from providing them with a reasonable opportunity to find the required insurance information.  Pursuant to KRS 304.39-117, a Kentucky motorist must present proof of insurance to a peace officer on request, but the General Assembly specifically allows a driver to provide such proof "in an electronic format[,]" *i.e.*, "the display of an image on any portable electronic device, including a cellular phone or any other type of portable electronic device, depicting a current valid representation of the card[.]"  KRS 304.39-117(4)(a).  When Robin informed Officer Haught that she would try to get insurance information from Rocky, there was nothing unreasonable about either her request or Officer Haught's acquiescence.

The second *Carlisle* question asks whether the officer inquired into matters unrelated to the mission of the stop while the stop was ongoing. Here, the answer is affirmative. The record is clear that Officer Haught spent some time investigating whether the Flex might be stolen. He also instructed Officer Bellau to talk to the vehicle's occupants and ascertain whether she could smell marijuana. Even so, the third *Carlisle* question asks if the officer's inquiries prolong the stop. The Kentucky Supreme Court has held that police do not unreasonably prolong a roadside detention if there are "concurrent operations," *i.e.*, if police perform investigative functions while "simultaneously completing the purpose of the stop." *Commonwealth v. Clayborne*, 635 S.W.3d 818, 826-27 (Ky. 2021) (quoting *Commonwealth v. Mitchell*, 610 S.W.3d 263, 270 (Ky. 2020)).

The trial court considered these issues in its order denying Miller's suppression motion. It determined that Officer Haught "never discontinued his investigation regarding the ownership of the vehicle while awaiting the arrival of the K-9." (R. at 157.) Officer Haught's testimony supports the trial court's view. Furthermore, the trial court also notes that the K9 unit was summoned while Officer Haught was waiting for Robin and Miller to produce proof of insurance, as is obligatory under KRS 304.39-117. They ultimately failed to produce that proof of insurance. Officer Haught was working on the citation for the traffic violations up until the point when the handgun was spotted in the Flex and Miller was

handcuffed.  Viewing the matter through the lens of *Clayborne* and *Mitchell*, *supra*, it is our view that the purpose of the stop had not yet been completed when the handgun was discovered and the Flex was searched.  We discern no error in the trial court's decision to deny Miller's suppression motion.

In Miller's second and last argument on appeal, he contends the trial court erroneously sentenced him to a two-year term of imprisonment, probated for three years, when the jury fixed his sentence at one year.  The Commonwealth concedes error on this point, and we agree.  "Kentucky law places the authority to determine the maximum sentence for an individual offense with the jury[.]"  *Sutton v. Commonwealth*, 627 S.W.3d 836, 856 (Ky. 2021).  A trial court may ameliorate a jury's unduly harsh sentence under KRS 532.070, but this discretion is in one direction only, as the statute does not authorize the trial court to impose a more severe sentence than the jury provides.  When the trial court erroneously gives a punishment which is more severe than that given by the jury, the appropriate remedy is to vacate the sentence and remand for resentencing; *see Bailey v. Commonwealth*, 70 S.W.3d 414, 418 (Ky. 2002).

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's denial of Miller's suppression motion and his subsequent conviction at his jury trial.  However,

-11-

because the trial court's sentence exceeds the term of years fixed by the jury, we vacate that portion of the judgment and remand for resentencing.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Emily Holt Rhorer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky